1              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF KENTUCKY
2             NORTHERN DIVISION AT COVINGTON

3
ALEXIS MORELL,                    :  Docket No. CV 06-202
4                                 :
               Plaintiff,         :  Covington, Kentucky
5                                 :  August 30, 2007
          versus                  :  2:00 p.m.
6                                 :
STAR TAXI, et al.,                :
7                                 :
               Defendant.         :
8
                              - - -
9

10              TRANSCRIPT OF ORAL ARGUMENT
               BEFORE WILLIAM O. BERTELSMAN,
11            UNITED STATES DISTRICT COURT JUDGE

12  APPEARANCES:

13  For the Plaintiff:         T. LARRY HICKS, ESQ.
                               DERRICK HUMFLEET, ESQ.
14                             Sutton, Hicks, Lucas, Grayson
                               & Braden, PLC
15                             130 Dudley Road
                               Suite 250
16                             Edgewood, KY 41018

17
    For the Defendant:         HANS M. PFAFFENBERGER, ESQ.
18                             Goldberg & Simpson, P.S.C.
                               9301 Dayflower Street
19                             Louisville, KY 40059

20  Court Reporter:            JOAN LAMPKE AVERDICK, RMR-CRR
                               Official Court Reporter
21                             35 W. Fifth Street, Box 1073
                               Covington, KY 41012
22                             (859) 291-9666

23

24
    Proceedings recorded by mechanical stenography, transcribed via
25  computer-aided transcription.

1      (Proceedings commenced at 2:00 p.m.)

2           THE COURT:  Okay.  Let's get your appearances, please.

3           MR. HICKS:  Larry Hicks and Derrick Humfleet for the

4  plaintiff.

5           MR. PFAFFENBERGER:  Hans Pfaffenberger for Defendant

6  ASI.

7           THE COURT:  Have you had a chance to read that Sixth

8  Circuit case?

9           MR. HICKS:  Yes, sir.

10          MR. PFAFFENBERGER:  Yes, sir.

11          THE COURT:  The appeal was for me.  I remembered it.

12  So let me just tell you where I am, and then anybody wants to

13  talk me out of any of these positions can try to do so.

14     Okay.  With that Sixth Circuit case, this situation where

15  you had a taxi driver who, as I understand the facts, followed

16  this woman, a passenger, into her house and raped her.  She left

17  the door open by carelessness or something, which really doesn't

18  enter into it.  Anyway, he followed her in and raped her.  So he

19  was some steps away from the car, from the taxicab.

20     The claim, the underlying claim, is for what, negligent

21  supervision?

22          MR. HICKS:  Several, but that's one of the claims.

23          THE COURT:  Okay.  That's one of them.

24          MR. HICKS:  Negligent hiring, negligent retention,

25  negligent supervision, and then vicarious liability.

1          THE COURT:  For the taxi driver?

2          MR. HICKS:  Vicarious liability for the taxi driver's

3    intentional conduct.

4          THE COURT:  Okay.  Does that enter into this insurance

5    coverage?

6          MR. HICKS:  Yes, sir.  One of our arguments is --

7          THE COURT:  All you need's one, I think.

8          MR. HICKS:  Well, we're actually -- we're actually

9    alleging in our brief that we're entitled to three separate

10   coverages.

11         THE COURT:  I'll get to that.

12         MR. HICKS:  And that's why we were --

13         THE COURT:  So here's what I say.  I think under the

14   Sixth Circuit case, it's clearly an accidental occurrence by the

15   insured.  The insured is the taxi driver.  You'd have to prove

16   negligent hiring.  So what's your proof, just out of curiosity,

17   what's your proof in the state court of negligent hiring?

18         MR. HICKS:  We haven't gotten anywhere so far.  We

19   have some ideas, but we stayed the proof on that case until this

20   could be resolved.

21         THE COURT:  Well, you go with the allegations in the

22   complaint, in the underlying complaint in state court, or what

23   court is that in?

24         MR. PFAFFENBERGER:  It's in here.  We severed.

25         THE COURT:  Okay.  All right.  So clearly, I think

1   under that Sixth Circuit case, it's an accidental occurrence.

2       Now, is it connected to the use of the automobile since the

3   whole point of the taxicab is to carry passengers and it's not

4   uncommon for taxi drivers to escort people into the house, and

5   that would be a contemplated activity by the driver?  I would say

6   it is.  Arises out of the use of the automobile.

7       On the multiple limits, seems to me there's only one wrong.

8   You had an act by the -- you had the negligent supervision

9   hiring, whatever it is.  You have an act by the employee, but

10  only one right of the underlying plaintiff is abridged.  And it's

11  one of the more rather -- I thought one of the clearest policy

12  provisions that I've read.  And it's clear what the intent is,

13  that no matter how many different theories you have of liability,

14  you basically got one cause of action; and that, therefore, the

15  single limit would apply.

16      And I believe that's what that -- although the matter is not

17  totally free from doubt, I believe that's what this Western

18  District case holds; that -- in there, there was a false arrest

19  count, too, and I think an assault and battery count, and they

20  said there are separate coverages for those.  But where you've

21  only got one wrong, one type of wrong, one right abridged, it

22  would seem to me that's one transaction or occurrence or accident

23  under the policy.  And especially when what the driver did is not

24  an accident.  That was intentional.

25      So since the liability's based on supervision, it wasn't an

1  accident.  If you've got other liability based on respondeat

2  superior, it's still only one wrong.  I think an accident in that

3  context means one event.

4        MR. HICKS:  Yes, sir.

5        THE COURT:  So who wants to try to talk me out of it,

6  any or all of those positions?

7        MR. PFAFFENBERGER:  I think I'll limit --

8        THE COURT:  I didn't start out to cut the baby like

9  Solomon, but --

10       MR. PFAFFENBERGER:  I'll limit some of the opening

11 comments I wanted to say.  Just if part of the use comes out of a

12 possibility of escorting the passenger to a car, that has not

13 been alleged in any possible circumstance.  There was no -- one,

14 there was no escorting.  Two, there was no coercive effect from

15 the --

16       THE COURT:  You can take judicial notice that

17 frequently taxi drivers help people up the steps if they need it

18 or help them with their luggage.

19       MR. PFAFFENBERGER:  Absolutely.  And that could happen

20 in some circumstances, but that has not been alleged here.

21 There's no connection.  It's she went in.  How does that limit

22 the time frame of --

23       THE COURT:  That's the relationship arose out of a

24 paid use of the automobile.

25       MR. PFAFFENBERGER:  Well, there was a relationship --

1          THE COURT:  Now, you notice in this case, you may not

2    have had time to read it thoroughly, but there, the guy came back

3    several days later and they said there was a connection.  That

4    was a commercial automobile.

5          MR. PFAFFENBERGER:  That was a commercial general

6    liability policy.  I think this, also, we're talking about what

7    would Kentucky do, and I think this goes well beyond any finding

8    that Kentucky courts have found where there's any kind of

9    coverage.

10          THE COURT:  Have you got any cases that says that

11    isn't what they would do?

12          MR. PFAFFENBERGER:  It hasn't been addressed before.

13          THE COURT:  Okay.  I think -- I'm looking for that

14    Western District opinion.  Here, they addressed it.  There the

15    rape took place inside the car so it was a little clearer.

16          MR. PFAFFENBERGER:  But that's also an attempt --

17          THE COURT:  And it wasn't part of transporting the

18    passenger.  I guess he had to stop and do it.

19          MR. PFAFFENBERGER:  In that case, if you could argue

20    that there was a use, perhaps he used the automobile for

21    concealment of his activities, for keeping the passenger within

22    the confines of the car.  The means, the car, you could even say,

23    was used in that circumstance.  There's no circumstance in this

24    case that you could say that the car was used.

25          THE COURT:  It was used to gain access to the house.

1    It got him in a position that she wasn't suspicious, got him on

2    the property.

3              MR. PFAFFENBERGER:  If it was used to determine some

4    future criminal intent, then you're saying that if someone used a

5    car to get to a robbery or something like that, that somehow --

6              THE COURT:  No, it would have to be robbery of a

7    passenger.  If you stuck the passenger up as she got out --

8              MR. PFAFFENBERGER:  If you robbed somebody in the

9    drive-through window, is that then --

10             THE COURT:  You mean while you were sitting in the

11   car?

12             MR. PFAFFENBERGER:  Yes.

13             THE COURT:  Well, that would be a crime most probably

14   under another exclusion.  Let's say as she was driving in there,

15   you ran into the drive-in window and did it, or if you reached

16   out of the car.

17             MR. PFAFFENBERGER:  I don't see how, if you

18   contemplated a criminal action while you're in the car, that that

19   somehow has relation to the car, or the use of the car.

20             THE COURT:  Well, you used the car in it.  I mean, it

21   put him -- the fact that he transported her put him in a position

22   to sneak up on her and commit the rape, as I understand the

23   allegation.

24             MR. PFAFFENBERGER:  So does that mean, too, he could

25   have come back hours or days later --

1          THE COURT:  I don't want to -- I don't need to get

2  into that.  Probably not, though.  He didn't come back hours or

3  days later.  It was immediately contiguous to the trip, and he

4  used that relationship to gain entry, to be in a position to gain

5  entry into the house.  It's not totally free from doubt, but

6  doubts are supposed to be resolved in favor of the insureds.

7          MR. PFAFFENBERGER:  The specific facts as pled by the

8  plaintiff are that she was into her house, so there's no further

9  need to get to her house.  He did not come into the house with

10  her.

11          THE COURT:  So it's not free from doubt.

12          MR. PFAFFENBERGER:  She left the door open, which

13  means that any relationship did not gain him access to the house.

14  It's her own actions that allowed anyone to have entered the

15  house.  He had no special relationship based on his interactions

16  with her in the car.

17          THE COURT:  You haven't changed my mind, but have you

18  got anything you want to add on it?

19          MR. HICKS:  I could address his arguments, but I don't

20  really see a need to.

21          THE COURT:  Okay.  Well, it's not as clear as it might

22  be, but the insured's supposed to get the benefit of the doubt.

23  Do you want to try to talk me out of the other thing?

24          MR. HICKS:  Yes, sir.  I just wanted to check the

25  complaint that we filed, and we did allege vicarious liability in

1  here as well.  And that was how we were arguing for more than one

2  coverage.  I understand what you were saying.

3      THE COURT:  That's two theories for the same accident.

4  Let's say the guy -- leave this crime out of it.  Let's say this

5  guy had been driving down the street and he was speeding and he

6  went through a red light, and he hadn't checked his brakes and he

7  was overtired, and he had had too much to drink and he ran over

8  the plaintiff.  Okay.  That doesn't give you five coverages

9  because you got five theories.

10      MR. HICKS:  Yes, sir, I understand.

11      THE COURT:  So you have vicarious liability, and you

12  throw negligent supervision into that, it's all going to the same

13  violation of the same right.

14      MR. HICKS:  Certainly there's a pretty strong

15  argument --

16      THE COURT:  That's what they held in the Western

17  District case.  The other two counts were a different right,

18  false imprisonment and assault and battery.

19      MR. HICKS:  Right.  That's why I pled vicarious

20  liability so that --

21      THE COURT:  That's a theory, it's not a right.

22      MR. HICKS:  -- so that we would ask that the defendant

23  be responsible for a false imprisonment and the sexual assault as

24  well.

25      THE COURT:  You didn't discuss those in your brief.

1  Have you got separate counts for that?

2       MR. HICKS:  Yes, sir.  We alleged vicarious liability

3  right in the complaint.

4       THE COURT:  All vicarious liability means is

5  respondeat superior applies.  It doesn't tell me anything about

6  what that's applying to.

7       MR. HICKS:  It makes employer responsible for

8  different things.  He's responsible for the negligent supervision

9  in his own right; but with vicarious liability, he's responsible

10  with what the taxi driver did, and he did two different things.

11  He held her against her will, and then he raped her, and that's

12  why we pled vicarious liability, to cover both.

13       THE COURT:  That's not in your brief, false

14  imprisonment.

15       MR. HICKS:  I don't remember if we used that word, but

16  we tried to tailor our brief pretty much exactly to the Western

17  District opinion because --

18       THE COURT:  Well, they had separate counts for false

19  imprisonment and assault and battery.

20       MR. HICKS:  I don't remember --

21       THE COURT:  But here, the liability would be for the

22  rape and the assault and battery.  If there was a period of false

23  imprisonment, then I can hold there's a separate count for that,

24  but it would only be for that.

25       MR. HICKS:  And I understand what you're saying.

1          THE COURT:  Because in the state court, the jury would

2     have to -- the Court would submit a special verdict and see if

3     they wanted to give something separate for that.

4          MR. HICKS:  It could be that my complaint wasn't well

5     enough drafted, but we certainly intend to --

6          THE COURT:  If that's what it was intended to claim.

7          MR. HICKS:  Assault and battery and false imprisonment

8     by vicarious liability.  I'd be happy to amend the complaint to

9     make it more clear, but that was the basis for our argument to

10    have more than one coverage.

11         THE COURT:  But, you see, you got negligent

12    supervision has got to relate or hiring has got to relate to

13    something.  So that relates to the rape.  So what wrongs were

14    committed?  She was assaulted.  Assault and battery, rape, that's

15    all part of the same right.

16         MR. HICKS:  Right.

17         THE COURT:  False imprisonment's a different right.

18         MR. HICKS:  Yes, sir.

19         THE COURT:  So you got two rights.  When you got two

20    rights, you're alleging -- I'm not saying it might not have been

21    long enough to count or something, but that's up to the state

22    court.  If you've got an allegation in your complaint of false

23    imprisonment, I'd say a separate coverage would apply to that,

24    but I would think, then, the state judge would submit a separate

25    interrogatory for that --

1        MR. HICKS:  I'll be happy --

2        THE COURT:  -- and see what they award for that.

3        MR. HICKS:  I'll be happy to amend the complaint to --

4        THE COURT:  Doesn't mean you get $100,000.  It may

5    only be worth 5,000 for that.  She was probably only imprisoned

6    for a few minutes.

7        MR. HICKS:  Might have been even less.

8        THE COURT:  The main wrong is the rape, and that's a

9    right.  You got two rights.  In this Western District case, he

10   had three rights.

11       MR. HICKS:  Right.  And he determined that the

12   negligent hiring supervision was one coverage and each of the

13   vicarious liability torts were different.

14       THE COURT:  You know, policy says one accident.

15       MR. HICKS:  Right.

16       THE COURT:  Or incident -- you can read that as being

17   incident -- then there's only one incident.

18       MR. HICKS:  And I understand what you're saying, that

19   the negligent supervision sort of overlaps.  Assuming that -- and

20   I'm not going to talk you out of that --

21       THE COURT:  The negligent hiring or -- probably

22   negligent hiring ran into supervision, unless they got some

23   notice that he was doing this stuff.  Negligent hiring has got to

24   relate to some wrong.  Negligent hiring never commits a wrong.

25   You're not liable.  So you had negligent hiring is a theory that

1   makes you liable for that wrong, like in the carpet case there.

2          MR. HICKS:  Right.

3          THE COURT:  Okay.  Now, so you got two different

4   theories.  It's like the guy who was speeding, he also wasn't

5   keeping a lookout.  That doesn't give you two coverages.  It just

6   leads to one accident.  Now, if he then gets out of the car after

7   the accident and punches the victim in the nose, then you got a

8   separate count for assault and battery, which is probably a

9   different --

10         MR. HICKS:  I just want to make sure that my pleading

11  is in tune with the Court's view of this.

12         THE COURT:  The policy says accident, and the only

13  accident you've got is the negligent supervision, negligent

14  hiring.  I'd have to think about that.

15         MR. HICKS:  Well, the reason why we say the

16  intentional tort's -- the vicarious liability is an accident is

17  because this bad thing happening, them having liability for some

18  intentional act, from the insured's point of view, is an

19  accident.  They certainly weren't intending any kind of harm like

20  that by virtue of having an employee; so to them, it is an

21  accident.  In fact, this particular policy does say that you view

22  the accident from the perspective of the insured, rather than the

23  actor.

24         If we had one accident being false imprisonment, one

25  accident being rape, that would be two separate accidents of

1 vicarious liability.

2      THE COURT: I've got to think about that.

3      MR. PFAFFENBERGER: In all fairness, the claim for

4 unlawful imprisonment is just part of being confined due to the

5 rape. There's specific Kentucky law, especially in regards to

6 criminal actions, that there is no separate count for unlawful

7 imprisonment or kidnapping if it's incident to the crime that's

8 being committed.

9      THE COURT: Let's read it again with that problem in

10 mind. Okay. Regardless of the -- I think the intent of this is

11 pretty clear. You know, they are allowed to limit their

12 liability if they make it clear.

13      MR. HICKS: Yes, sir, I understand.

14      THE COURT: And usually, no matter how hard they try,

15 there is some ambiguity; but I think their intent on what they

16 want to do here is pretty clear. It says regardless of the

17 number of insureds, persons injured, claims made, or suits

18 brought, on account of bodily injury or property damage, vehicles

19 stated in the declaration, the vehicle involved in the accident,

20 if the limit of liability is stated in the declarations as a

21 combined single limit, the total limit of liability for all

22 damages for bodily injury and property damage, taken together --

23 okay, but it's for bodily injury and property damage taken

24 together -- arising out of any one accident shall be the amount

25 stated in the declaration.

1      So let me back up one step further and say, is there even

2   coverage for false arrest?  A lot of policies exclude that kind

3   of stuff, false arrest, liable, slander, assault and battery,

4   that sort of thing.

5      MR. HICKS:  They don't have exclusions here for bodily

6   injury or intentional torts.

7      THE COURT:  No, it's a bodily injury policy, but it

8   says the limit for liabilities for bodily injury and property

9   damage, then I would say if you've got a separate claim for false

10  arrest, it's covered, you'd have a separate limit, or whatever

11  the limit on the declarations page says that is.

12     MR. HICKS:  That's pretty much what we were arguing,

13  that they have done a good job limiting it per accident, so we

14  argued there was more than one accident.  There's the rape and

15  the false imprisonment.

16     MR. PFAFFENBERGER:  And at the same time, if we're

17  aside on that, the definition of bodily injury means bodily

18  injury, sickness, or death sustained by any person.  The false

19  imprisonment, how does that even fit into that?

20     THE COURT:  That's a violation of your common law

21  right to liberty.  A person can be liable for false imprisonment

22  even if there is no bodily injury.

23     MR. PFAFFENBERGER:  But as far as being covered under

24  the policy --

25     THE COURT:  Well, if it doesn't say it's covered, it's

1   not covered.  You want to submit a supplemental memo on this,

2   I'll look at it.  You got a separate --

3            MR. HICKS:  Yes, sir.

4            THE COURT:  Let's say on the way out, the guy -- well,

5   I'm trying to think of something -- calls her names on the way

6   out.  She's got another count for intentional infliction of

7   emotional distress or something.  The policy, either those things

8   are covered or not.  Frequently, those things are not covered.

9            MR. HICKS:  Right.

10            THE COURT:  Maybe that type of thing is not covered.

11   It's not property damage, bodily injury of property damage.

12   That's for sure.

13            MR. HICKS:  Yeah, I haven't given it much thought.

14   That wasn't raised in the briefs, so I'd be happy to take a look

15   at it.

16            THE COURT:  I'm going to rule, as I said, on the other

17   issues, and why don't you submit memos on this multiple.

18            MR. HICKS:  Okay.

19            THE COURT:  You might go back to this complaint.  Is

20   that a separate count in your complaint, the false arrest?

21            MR. HICKS:  I will make sure that the complaint is

22   real clear that we're looking for vicarious liability for the

23   false imprisonment and the rape so that it will comport with our

24   discussion.

25            MR. PFAFFENBERGER:  Well, if I can understand, too, is

1  the Court ruling that under the theory of negligent

2  hiring/supervision, that that's where the coverage is?  Is it

3  under vicarious liability?

4          THE COURT:  The coverage is for negligent supervision

5  because that's the only thing that -- negligent hiring and/or

6  supervision because that's the only thing that's an accident.

7          MR. PFAFFENBERGER:  Okay.

8          THE COURT:  What the taxi driver did was intentional.

9          MR. PFAFFENBERGER:  Okay.  So far as under a theory of

10  vicarious liability itself, there would not be coverage; it's

11  just a matter of negligent hiring?

12          THE COURT:  It depends on the common law, I guess.

13  It's only an accident -- let's see.  Are you trying to get -- say

14  that the taxi company is liable under the theory of respondeat

15  superior.  Is that what you mean by that?  You're using vicarious

16  liability like it's a separate cause of action, but it's just the

17  way you implement --

18          MR. HICKS:  I'm using it as a separate accident, a

19  separate bad thing that happened to this taxicab company.  The

20  first bad thing that happened to them was their negligent hiring.

21  The next bad thing, accident, that happened to them was one of

22  their cab driver's falsely imprisoned someone.  The next bad

23  thing that happened to them was he then raped them.  And I

24  understand what you're saying, the negligent supervision overlaps

25  with that.  So now I'm just focusing on the possibility of two

1 coverages for two accidents being --

2         THE COURT:  Look at it this way:  What wrongs happened

3 to this lady?  Okay.  She was raped.

4         MR. HICKS:  Yes, sir.

5         THE COURT:  Now, to get to the company for the rape,

6 you either got to bring that under the doctrine of respondeat

7 superior --

8         MR. HICKS:  Yes, sir.

9         THE COURT:  -- or you've got to bring it in negligent

10 hiring.  I assumed, in reading your briefs, you weren't getting

11 it in respondeat superior because the guy stepped out of the

12 scope of his employment.  So if you're alleging that he was

13 within the scope of his employment, which I didn't understand you

14 to be --

15         MR. HICKS:  No, sir.

16         THE COURT:  -- that --

17         MR. HICKS:  We alleged because it was a common

18 carrier, he can't get outside the scope of his employment.

19 They're responsible for intentional torts because they're a

20 taxicab company, and they have to guarantee --

21         THE COURT:  The policy doesn't cover intentional

22 torts.  They might be responsible for them, but the policy

23 doesn't cover them.

24         MR. HICKS:  Right.  But the policy, in terms of

25 intent --

1    THE COURT:  Right now, I think the policy can only

2  cover negligent hiring, because that led to a result that was not

3  intended or expected by the named insured.

4    MR. HICKS:  Correct.

5    THE COURT:  The insured is the taxi company.  Then if

6  you go to, try to bring it under the theory of respondeat

7  superior, it is an intentional act on the part of the taxi

8  driver.

9    MR. HICKS:  Right.  And then the cases say that you

10  can't impute that scienter to the employer.

11    THE COURT:  That's what I thought.

12    MR. HICKS:  You cannot.

13    THE COURT:  Because it's outside the scope of his

14  employment.

15    MR. HICKS:  No, they're still responsible for his

16  actions, but you can't impute scienter to the employer because

17  it's not what he intended.  And on this particular policy, it

18  certainly says from the issue of the accident, you are to look

19  from the perspective of the insured.  That's the employer.

20    So if you look from the perspective of the employer, this is

21  an accident to him.  It's not an intentional tort from his point

22  because he had no scienter at all.  He was hoping that his

23  taxicab would go fine and not have this conduct.  So that's why

24  we say it's an accident as to the insured, not to the cab driver.

25  Obviously, he wouldn't be covered.  And I think that was the

1 holding for Gateway.

2             THE COURT:  I think it was, yeah.

3             MR. HICKS:  So that's why I want to make sure my

4 pleading fits with your analysis.

5             THE COURT:  Now, that's one right violated, and that

6 would be -- however many theories you have, you've got negligent

7 hiring, you've got plain old respondeat superior, which I guess

8 is what you mean by derivative liability.

9             MR. HICKS:  Yes, sir.

10            THE COURT:  And that's one right violated, her bodily

11 right not to be raped, her common law right not to be raped.

12            MR. HICKS:  Yes, sir.

13            THE COURT:  You've got -- you're pleading a separate

14 count for false imprisonment.

15            MR. HICKS:  Yes, sir.

16            THE COURT:  That may not be covered by the policy at

17 all.

18            MR. HICKS:  I understand.

19            THE COURT:  Because it says for bodily injury.  If it

20 is, it would be under a separate limit, but it may not be covered

21 at all.  The fact that you've got two theories for the violation

22 of one right does not invoke the separate limit, in my opinion.

23            MR. HICKS:  I understand.

24            THE COURT:  If you read it carefully, I think that's

25 what the Western District held.

1          MR. HICKS:  I'd be happy to look at that, whether or

2   not false imprisonment qualifies as a bodily injury for that

3   exclusion.  Neither of us mention that issue in our briefs so I

4   have not looked at it prior to today.  I don't know if Hans has.

5          MR. PFAFFENBERGER:  I mean, no, I looked at it from a

6   different angle, but I'm just reading the sentence that describes

7   bodily injury, and it says sickness or disease sustained by a

8   person.

9          THE COURT:  Has it got an exclusion for false

10  imprisonment, libel and slander, that kind of stuff?

11         MR. PFAFFENBERGER:  No, but at the same time, it

12  shouldn't because it's usually with the car.

13         THE COURT:  They usually put it in the exclusions,

14  too, to make it even clearer.  Look in the exclusions, see if

15  there's --

16         MR. PFAFFENBERGER:  Having looked through it, I don't

17  believe it is.  But like I said, we're dealing with an automobile

18  policy where normally things like that wouldn't be covered

19  because they're not covered under the MVRA.

20         MR. HICKS:  It's a motor vehicle policy for a taxicab

21  company, and the common carrier standard has been around for more

22  than a hundred years.

23         THE COURT:  I'd have to say that false imprisonment is

24  not bodily injury.  You can have false imprisonment if somebody

25  is arrested for shoplifting.  That's the usual case.  You don't

1 see it coming up too much anymore.  Police arrest somebody

2 without probable cause.

3          MR. HICKS:  Yes, sir.

4          THE COURT:  I just had a case come down from the

5 Supreme Court involving that.

6          MR. PFAFFENBERGER:  Just so we're clear, and for

7 whatever order comes down, the finding of the Court is that the

8 Motor Vehicle Reparations Act of Kentucky does apply to this

9 case?

10          THE COURT:  What's that got to do with it?

11          MR. PFAFFENBERGER:  I mean, I think that's how you get

12 into an automobile policy, is that.

13          THE COURT:  It's just common law.  You've got an

14 insurance policy.  What does the Act say, other than --

15          MR. HICKS:  I don't know of any application that I can

16 think of.

17          THE COURT:  I guess it does, yeah, but I don't know

18 that it's got anything to do with this issue.

19          MR. PFAFFENBERGER:  Because if the Court's finding

20 that this does arise out of the use, operation, or maintenance of

21 a motor vehicle, which I believe --

22          THE COURT:  For insurance purposes.  I'm not trying to

23 make any precedent as far as payment of PIP or something.

24 Different language can mean different things in different

25 context.

1          For instance, in insurance policies, it's construed most

2     strongly against the company.  But for PIP purposes, I don't

3     know -- I don't know if you could put a PIP claim in your

4     covenants.  That's a whole different issue.  Do you understand

5     what I'm saying?

6               MR. PFAFFENBERGER:  Well, I mean, I figure --

7               THE COURT:  I'm not saying anything about the Motor

8     Vehicle Reparations Act.  Let's go off the record a minute.

9          (Off-the-record discussion.)

10              THE COURT:  I think it's covered, but only to maybe to

11    one limit.

12              MR. HICKS:  Subject to briefs.

13              THE COURT:  Yes, briefs on that third issue.

14              MR. HICKS:  Do I have leave to file that amended

15    complaint to make sure it is in line with the discussion today,

16    to make sure it's clear that we're asking for --

17              THE COURT:  That's in this court?  Yeah.

18              MR. HICKS:  Is it in this?

19              MR. PFAFFENBERGER:  No, it's all one action.

20              THE COURT:  Yeah, you can file an amended complaint.

21    I'll give you 20 days to do that.  And simultaneously, you can

22    file a brief on this limits issue.  Or if you want to call my

23    attention to something I've overlooked, you can do that, too.

24    Don't rehash the whole thing.

25              MR. HICKS:  Oh, no, sir, I wouldn't do that.  Okay.

1            THE COURT:  I thought that Sixth Circuit case was

2     pretty clear on the accidental occurrence part of it.

3            MR. HICKS:  Yes, sir.

4            THE COURT:  How much time do you need to do that?  Did

5     I say 20 days?

6            MR. HICKS:  Twenty days.  That will be fine.

7            THE COURT:  Okay.

8                    C E R T I F I C A T E

9            I, JOAN LAMPKE AVERDICK, RMR-CRR, certify that
      the foregoing is a correct transcript from the record of
10    proceedings in the above-entitled case?

11

12    S/Joan Lampke Averdick                June 19, 2008
      JOAN LAMPKE AVERDICK, RMR-CRR        Date of Certification
13    Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25